RAMIRO MORALES, SBN 167947
rmorales@mfrlegal.com
CHRISTINE FIERRO, SBN 191660
cfierro@mfrlegal.com
MORALES FIERRO & REEVES
2151 Salvio St., Ste 280
Concord, CA  94520
Telephone:  (925) 288-1776
Facsimile:  (925) 288-1856

Attorneys for Plaintiff
HDI GLOBAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HDI GLOBAL INSURANCE COMPANY, an Illinois corporation, <br><br> Plaintiff, <br><br> v. <br><br> RIPTIDE CONSTRUCTION, INC., a California corporation, ROBERT JONES, an individual, and DAVID MAHER, an individual, <br><br> Defendant. | CASE NO.:  3:19-cv-02474 <br><br> **COMPLAINT FOR: DECLARATORY RELIEF AND UNJUST ENRICHMENT** |

Plaintiff HDI GLOBAL INSURANCE COMPANY ("HDI") alleges as follows:

1.       Plaintiff HDI is, and at all times mentioned herein was, an Illinois corporation with its principal place of business in Illinois.

2.       On information and belief HDI alleges that Defendant RIPTIDE CONSTRUCTION, INC. ("Riptide) is, and at all times mentioned herein was, a California corporation with its principal place of business in California.

3.       On information and belief HDI alleges that Defendant ROBERT JONES ("Jones"), is, and at all times mentioned herein was, an individual residing in California.

4.       On information and belief HDI alleges that Defendant DAVID MAHER ("Maher"), is, and at all times mentioned herein was, an individual residing in California.

COMPLAINT

1

**JURISDICTION AND VENUE**

2      5.      This Court has jurisdiction under 28 U.S.C. Section 1332 in that this matter is a civil

3   dispute between citizens of different States in which the amount in controversy, exclusive of costs

4   and interest, exceeds seventy-five thousand dollars ($75,000.00).

5      6.      Venue is proper in the United States District Court for the Northern District of

6   California in that all of the defendants are subject to personal jurisdiction in this district at the time

7   the action is commenced and there is no district in which the action may otherwise be brought.  The

8   subject matter of this action arose in this district; specifically, the underlying dispute is embodied in

9   an action entitled *Maher v. Riptide, et al.*, Marin County Superior Court Case No. CIV1704077 (the

10   "Underlying Action").  Further, the subject matter of the underlying dispute, giving rise to this

11   coverage action, is a real property construction project located in this district, located at 25

12   Edgewood Way, San Rafael, California ("the Property").

13

**GENERAL ALLEGATIONS**

14   *The Underlying Action*

15      7.      In the Underlying Action giving rise to this coverage dispute, Maher brought suit

16   against Riptide, Jones, and Jared Ede (Ede), among others, alleging that Maher purchased the

17   Property (a home in San Rafael) in 2016 from  Ede.  The Second Amended Complaint, the

18   operative complaint in the Underlying Action, is attached hereto as Exhibit A.  Maher alleges that in

19   or about 2006, Ede engaged Riptide to perform construction at the Property, "in particular building

20   a swimming pool and other structures adjacent to the pool," including a pool house and decking.

21   Exhibit A. Para 14.  Maher alleges that the work included adding fill materials and a retaining wall

22   and required excavation and grading.  Exhibit A. Para. 14.

23      8.      Maher alleges that Jones was at all relevant times, the owner or principal of Riptide

24   (para 4) and that Jones, as the alter ego of Riptide, should "be held personally responsible and liable

25   for damages caused the plaintiff." Exhibit A. Para 13.

26      9.      In January 2017 a landslide occurred at the property in the same area where

27   construction was done by Ede and the remaining defendants in or about 2007 and 2008, causing

28   substantial damage to plaintiff [Maher] and plaintiff's property. Exhibit A. Para 16.

COMPLAINT

10.     In the Underlying Action, Maher alleges that the "landslide was caused substantially by improper construction activity, including, but not limited to, the placement of poorly compacted and inadequately retained fill materials at the property, failure to obtain appropriate inspections and follow appropriate codes as well as inadequate drainage as part of the 2006/2007/2008 construction project undertaken by the defendants." Exhibit A. Para 18.

11.     Against Riptide, Maher alleges counts for negligence, negligence per se, and fraud/ concealment.  Maher alleges that defendants failed "to perform the respective construction activities in a proper and workmanlike manner, willfully concealing the lack of permits for the project beyond the pool itself, and failure to property [sic] engineer portions of the project which ultimately failed causing the landslide at the plaintiff's property."  Exhibit A. Para Para 22.

***The HDI Policies***

12.     HDI issued general liability policies to Riptide as follows:

Policy number GK20X000611 00 10, effective from August 25, 2015, to March 1, 2016 ("the 20015-16 Policy");

Policy number GK20X000611 00 07, effective from March 1, 2016, to March 1, 2017 ("the 20016-17 Policy");

Policy number GK20X000611 02 11, effective from March 1, 2017, to March 1, 2018 ("the 20017-18 Policy");

Policy number GK20X000611 03 11, effective from March 1, 2018, to March 1, 2019 ("the 20018-19 Policy") (collectively, all four policies hereinafter "the Policies").

13.     Each of the Policies includes the general liability form, CG0001 04 13, which states:

>    a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking these damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

14.     Each of the Policies includes the form NI GL AM 2009 (05 14), "Continuous or Progressive Injury and Damage Limitation," which states:

---

COMPLAINT

Insuring Agreement under Section 1., COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, paragraph b (1), (2), (3), paragraph c, and paragraph d. are replaced by the following:

1.      Insuring Agreement

        b.      This insurance applies to "bodily injury" and "property damage" only if:

                (1)      the "bodily injury" and "property damage" is caused by an "occurrence" that first takes place in the "coverage territory"; and

                (2)      the "bodily injury" or "property damage" first occurs or is alleged to first occur during the policy period.  This insurance does not apply to any "bodily injury" or "property damage" that is continuous or progressively deteriorating and that first occurs prior to the effective date of this policy or after the expiration of this policy, even if such injury or damage continues or deteriorates during the time of this policy period.

                (3)      which were caused, or are alleged to have been caused, by the same condition which resulted in . . . "property damage" which first existed prior to the inception date of this policy.

        c.      This insurance does not apply to "bodily injury" and "property damage" that first occurs prior to the effective date of this policy regardless of whether such "bodily injury" or "property damage" was known or unknown to any person, organization or entity.

        d.      In the event this policy is renewed and coverage extends for more than one policy period, the following applies:

                (1)      the most we will pay for "bodily injury" and "property damage" that is continuous or progressively deteriorating and that first occurs during one of the policy periods, is the applicable limit of insurance available with respect to that one policy period.

                (2)      the limit specified in paragraph d.(1) above is the only limit that applies to "bodily injury" or "property damage" regardless of whether such injury or change existed before, or continues or progressively deteriorates after the policy period in which first occurs.

. . .

COMPLAINT

15.     The Policies define "property damage" as: "a. physical injury to tangible property, including all resulting loss of use of that property. . . .  or b. loss of use of tangible property that is not physically injured. . . ."

16.     The Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

17.     Each of the Policies includes the form NI GL EX 2017 (05 14), entitled "Absolute Movement of Land, Earth, or Soil Exclusion," which states:

> This insurance does not apply to any and all, actual or alleged, "bodily injury," "property damage," "personal injury" or "advertising injury" caused directly or indirectly, based on or attributable to, arising out of, resulting from, or in any manner related to the "movement of land, earth or soil."  This exclusion applies regardless of any other cause or event contributing concurrently or in any sequence or manner to the loss including, but not limited to, the following causes:

> 1.     Flood waters, surface waters, subterranean waters, percolating waters . . . or other bodies of water, spray from any of the foregoing, or irrigation or other appropriated waters, all whether driven by wind or not;

> 2.     Storm or any sanitary sewer drain stoppage or back flow or water which backs up through sewers or drains;

> 3.     Surface water or water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, , seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows, or any other openings in such sidewalks, driveways, foundations, walls or floors;

> 4.     Water leakage, overflow or other escape from plumbing, heating, ventilating, air conditioning or other systems, equipment or appliances;

> 5.     Any acts, decisions, error or omission, including the failure to act or decide, of any person, group, organization or governmental body;

> 6.     Faulty, inadequate or defective

>> a.     planning, zoning, development, surveying, siting;

>> b.     designs, specifications, workmanship, repair, construction renovation, remodeling, grading, compaction, drainage;

>> c.     materials used in repair, construction, renovation or remodeling; or

>> d.     maintenance;

> of part or all of any property wherever located.

COMPLAINT

As used herein "movement of land, earth or soil" shall include, but is not limited to earthquake, landslide, subsidence, mudflow, sinkhole, erosion, upheaval, slippage, sliding, sinking, rising, shifting, tilting, expanding or contracting of earth or soil.

All other terms and conditions of this policy remain unchanged.

18.     Each of the Policies includes the form CG22 43 04 13, entitled "Exclusion – Engineers, Architects or Surveyors Professional Liability," which states:

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1.     the preparing, approving or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawing and specifications; and

2.     supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or others wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the . . ."property damage" . . . involved the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

19.     Riptide and Jones tendered their defense to HDI under the Policies with respect to the Underlying Action.  HDI agreed to and is defending Riptide and Jones in the Underlying Action subject to a reservation of rights.  The reservation of rights letter which HDI sent to Riptide is attached hereto as Exhibit B.

## FIRST CAUSE OF ACTION

## DECLARATORY RELIEF – DUTY TO DEFEND

20.     HDI incorporates by reference as though fully set forth herein the allegations in paragraphs 1 through 19 above.

21.     HDI alleges, pursuant to the terms, conditions, exclusions and endorsements of the Policies as well as equitable principles, that HDI has no duty to defend Riptide and/or Jones in the Underlying Action.

/ / /

COMPLAINT

22.     On information and belief, HDI alleges that Riptide, Jones and Maher deny HDI's assertions and assert the contrary.

23.     By reason of the foregoing, an actual controversy exists between the parties which requires a declaratory judgment of this Court in substantially the following form: HDI has no duty to defend Riptide and/ or Jones in the Underlying Action.

24.     A judicial determination of this controversy is necessary and appropriate in order for the parties to ascertain their rights, duties and obligations under the Policies.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

## DECLARATORY RELIEF – DUTY TO INDEMNIFY

25.     HDI incorporates by reference as though fully set forth herein the allegations in paragraphs 1 through 24 above.

26.     HDI alleges, pursuant to the terms, conditions, exclusions and endorsements of the Policies as well as equitable principles, that HDI has no duty to indemnify Riptide and/or Jones in the Underlying Action.

27.     On information and belief, HDI alleges that Riptide, Jones and Maher deny HDI's assertions and assert the contrary.

28.     By reason of the foregoing, an actual controversy exists between the parties which requires a declaratory judgment of this Court in substantially the following form: HDI has no duty to indemnify Riptide and/or Jones in the Underlying Action.

29.     A judicial determination of this controversy is necessary and appropriate in order for the parties to ascertain their rights, duties and obligations under the Policies.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## THIRD CAUSE OF ACTION

## DECLARATORY RELIEF – NO RIGHT TO INDEPENDENT COUNSEL

### (Against Riptide and Jones)

30.     HDI incorporates by reference as though fully set forth herein the allegations in paragraphs 1 through 24 above.

COMPLAINT

31.     Jones and Riptide have asserted that HDI owes a duty to defend them in the Underlying Action and that HDI must defend through Jones' and Riptides' selected, independent counsel pursuant to Civil Code Section 2860, which states:

> (a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel. . . . .

> (b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits.

32.     HDI contends that it does not owe a duty to defend, but that even if it did, it does not owe independent counsel pursuant to Civil Code Section 2860, as its reservation of rights has not created an actual and genuine conflict of interest for counsel undertaking the tripartite representation of Riptide, Jones and HDI in connection with the Underlying Action.

33.     By reason of the foregoing, an actual controversy exists between the parties which requires a declaratory judgment of this Court in substantially the following form: HDI has no duty to provide Riptide and/or Jones independent counsel in the Underlying Action.

34.     A judicial determination of this controversy is necessary and appropriate in order for the parties to ascertain their rights, duties and obligations under the Policies and Civil Code Section 2860.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

### (Against Riptide and Jones)

35.     HDI incorporates by reference as though fully set forth herein the allegations in paragraphs 1 through 34 above.

36.     HDI does not have a duty to defend Riptide and/or Jones with regard to the claims made in connection with the Underlying Action

COMPLAINT

37.     In providing a defense to Riptide and Jones, HDI has incurred and is continuing to incur attorney's fees and costs.  In contrast, Riptide and Jones have failed to contribute any amount toward the fees and costs HDI has incurred and is incurring in the Underlying Action.  Riptide and Jones therefore, have been unjustly enriched in regards to the defenses provided in the Underlying Action

38.     Riptide and Jones are obligated, under principles of equity, to reimburse HDI for the fees and costs HDI has inequitably incurred in providing a defense to Riptide and Jones in the Underlying Action.  The amount of restitution to which HDI is entitled will be according to proof at trial.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

**PRAYER FOR RELIEF**

WHEREFORE, HDI respectfully prays for judgment against Defendants as follows:

As to the First Cause of Action for Declaratory Relief – Duty to Defend:

1.     For a declaration and determination that HDI does not have a duty to defend Riptide and/ or Jones with regards to the claims made in the Underlying Action;

2.     For an award of costs;

3.     For all other relief the Court deems just and proper.

As to the Second Cause of Action for Declaratory Relief - Indemnity:

1.     For a declaration and determination that HDI does not have a duty to indemnify Riptide and/ or Jones with regard to the claims made in the Underlying Action;

2.     For an award of costs;

3.     For all other relief the Court deems just and proper.

As to the Third Cause of Action for Declaratory Relief – No Right to Independent Counsel:

1.     For a declaration and determination that HDI, should it have a duty to defend, is not obligated to provide independent counsel under Civil Code Section 2860;

2.     For an award of costs;

3.     For all other relief the Court deems just and proper.

/ / /

COMPLAINT

1       As to the Fourth Cause of Action for Unjust Enrichment:

2           1.      For restitution according to proof at trial;

3           2.      For an award of costs; and

4           3.      For all other relief the Court deems just and proper.

5   Dated:  May 6, 2019                          MORALES FIERRO & REEVES

6

7                                       By:____/s/ Ramiro Morales_____
                                            Ramiro Morales
8                                           Christine M. Fierro
                                            Attorneys for Plaintiff HDI GLOBAL
9                                           INSURANCE COMPANY

COMPLAINT

EXHIBIT A

1 | Alan Mayer (No. 64373)
  | WILLIAMS & GUMBINER LLP
2 | 100 Drakes Landing Road, Suite 260
  | Greenbrae, CA 94904
3 | Phone: (415) 755-1880
  | amayer@williamsgumbiner.com
4 |
  | Attorneys for Plaintiff
5 | David Maher

6

7

8 | SUPERIOR COURT OF CALIFORNIA

9 | COUNTY OF MARIN

10

11 | DAVID MAHER,                          | Case No. CIV1704077

12 |          Plaintiff,                   | **SECOND AMENDED COMPLAINT**

13 |               vs.                     | Complaint Filed: 11/2/17
   |                                       | Hon. Chernus, Courtroom B
14 | JARED EDE, INDIVIDUALLY AND AS
   | TRUSTEE OF THE JARED EDE TRUST,
15 | RIPTIDE CONSTRUCTION INCORPORATED,
   | ROBERT JONES AND DOES 1-50,
16 |
17 |          Defendants.

18 | Plaintiff David Maher ("Maher") alleges as follows:

19 | **GENERAL ALLEGATIONS**

20 |       1.      Plaintiff at all times herein mentioned is the current owner of the property

21 | commonly known as 25 Edgewood Way, County of Marin, San Rafael, California (the

22 | "property").

23 |       2.      Defendants Jared Ede, individually and as Trustee of the Jared Ede Trust

24 | (collectively, "Ede") and Does 1 through 10 at all times herein mentioned were and are residents

25 | of the County of Marin. These defendants prior to 2017 owned the property at 25 Edgewood

26 | Way, San Rafael, California.

27 |       3.      Defendants Riptide Construction Incorporated ("Riptide") and Does 11 through

28 | 20, at all times herein mentioned were the owners and operators of Riptide, a corporate business

-1-

SECOND AMENDED COMPLAINT

1 entity qualified to do business in the state of California, actually doing business in the State of

2 California and with its principal place of business in the State of California.

3      4.    Plaintiff does not know the true names and capacities of defendants Does 1

4 through 50, inclusive, and plaintiff therefore sues said defendants by such fictitious names,

5 pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes and thereon

6 alleges that each such fictitiously named defendant is responsible in some manner for the events

7 and happenings here in referred to, whether directly, statutorily, or vicariously, by way of

8 negligence, breach of a statutory duty, and caused or is responsible for damages proximately

9 resulting to plaintiff and plaintiff's property, and plaintiff will ask leave to amend his complaint

10 to show the true names and capacities of such defendants when the same have been ascertained.

11      5.    Plaintiff is informed and believes and alleges that at all times mentioned in this

12 complaint, one or more of the defendants was acting as the agent, servant, partner, employee or

13 joint venture or of one or more of the remaining defendants, and in doing the things described in

14 this complaint was acting within the course and scope of this agency, service, partnership, joint

15 venture and/or employment with the permission and consent, express and implied, and for the

16 benefit of one or more of the remaining defendants. As such, they share liability with each other

17 with respect to said matters complained of herein. Moreover, defendants Riptide and Robert Jones

18 ("Jones") and said Doe defendants were under the direct supervision of other defendants in this

19 matter who, at all times herein mentioned, negligently directed and/r or supervised them.

20      6.    Plaintiff is informed and believes and thereon alleges that at all times herein

21 mentioned, defendants Jones and Does 11 through 20 was and were the owners, principals and

22 actual persons in control of corporations, agents, servants, employees, alter egos,

23 instrumentalities, representatives, co-venturers and partners, and acted with the permission and

24 consent of their codefendants, and as such share liability with each other with respect to the

25 matters complained of herein.

26      7.    Plaintiff is informed and believes, and on that basis alleges, that Riptide and Does

27 11 through 20 were and currently remain grossly undercapitalized and did not, and still do not,

28 maintain assets sufficient to pay for foreseeable liabilities that the projects undertaken by said

SECOND AMENDED COMPLAINT

1   defendants would cause, including the kind of harm and damages that were suffered by plaintiff

2   in this instance.

3      8. Plaintiff is informed and believes that defendants Riptide and Does 11 through 20

4   did not procure or maintain the appropriate insurance relating to their construction activities,

5   including this or other of its building projects, or for the management, engineering, design or

6   other related activities and services utilized, engaged in, performed for, and offered to the general

7   public.

8      9. Plaintiff further is informed and believes that Riptide and Does 11 through 20 were

9   sham entities, and it was the practice of these defendants to use these entities for their personal

10  use and commingled assets and diverted them without adherence to requisite corporate or limited

11  liability company formalities, and that this behavior and practice has and will contribute in

12  significant part to the failure to retain assets that would meet their respective liabilities to

13  customers.

14     10. Further, plaintiff is informed and believes, that other requisite corporate

15  formalities such as meetings, minutes, votes, reports and the like, were not performed, maintained

16  or honored by Riptide, such that these corporate and/or limited liability entities were but a sham

17  that were maintained, exploited and misused.

18     11. Plaintiff is informed and believes that these activities were performed by said

19  defendants in order to obtain funds from clients for their personal use while insulating themselves

20  from personal liability for their acts.

21     12. As a result of the sham status of Riptide, a grave injustice would result to plaintiff

22  should the personal assets of Jones and various Doe defendants, and other such individuals as

23  participated, be allowed to be protected from exposure to the damage claims of plaintiff.

24     13. The alter egos of Riptide should therefore be held personally responsible and liable

25  for damages caused the plaintiff by them collectively and/or individually for damages to plaintiff

26  caused by their business practices.

27     14. While Mr. Ede and Does 1 through 10 owned the property, they engaged in certain

28  construction activity in particular building a swimming pool and other structures adjacent to the

SECOND AMENDED COMPLAINT

1    pool. This included, but was not limited to, a pool house and decking between the pool and pool

2    house. This activity required and included the use of fill materials and retaining walls. It required

3    excavations and grading. Plaintiff is informed and believes that defendant Ede and Does 1

4    through 10 hired defendants Riptide, Jones and Does 11 through 20 to perform this work.

5          15.    On or about October 2016, plaintiff entered into a residential purchase agreement

6    with defendants Ede and Does 1 through 10. At the time of the sale, these defendants represented

7    to plaintiff that there were no fill materials placed on the site, that all work done at the site had

8    been completed in a proper and workmanlike manner without deficiencies and in a timely manner

9    with appropriate permits timely issued and finalized by appropriate public entities, that there were

10   no structural deficiencies at the property and this home was a high end home without any building

11   code irregularities. Plaintiff purchased the property with the intent to use it as his personal

12   residence and to use it for various events including but not limited to a wedding celebration.

13         16.    In January 2017 a landslide occurred at the property in the same area where the

14   construction was done by Mr. Ede and the remaining defendants in or about 2007 and 2008,

15   causing substantial damage to plaintiff and plaintiff's property. There was no final building

16   permit issued in 2007/2008 for the project, nor was there any notice of completion filed or

17   recorded for the work. There was never a building permit issued for the pool house or deck area

18   between the pool and pool house, despite ones being required by the Uniform Building Code,

19   California Building Code and local ordinances by the City of San Rafael. Improper grading and

20   fill placement was performed by these defendants. Failure to obtain the appropriate permits,

21   perform proper grading and fill placement and failure to obtain appropriate inspections and

22   engineering was willful misconduct and/or a fraudulent concealment, as all of the defendants

23   knew that appropriate inspections, proper construction activity and appropriate permits were

24   required to be completed and obtained by them.

25         17.    Mr. Ede continued to retain possession of the property in the area where the work

26   was performed until 2016.

27         18.    The landslide was caused substantially by improper construction activity,

28   including, but not limited to, the placement of poorly compacted and inadequately retained fill

-4-

SECOND AMENDED COMPLAINT

1    materials at the property, failure to obtain appropriate inspections and follow appropriate codes as

2    well as inadequate drainage as part of the 2006/2007/2008 construction project undertaken by the

3    defendants. The failure to obtain the requisite permits and engineering deprived the public entity

4    of the opportunity to inspect the construction performed by defendants. Defendants were

5    required to obtain permits for this work for a number of reasons, including, but not limited to, the

6    health and safety of the persons and property and to provide subsequent owners of the property, a

7    class of persons of which plaintiff is a member, with some degree of assurance that work done at

8    the property was performed to certain basic construction criteria in compliance with the Uniform

9    Building Code, California Building Code and local ordinances of the City of San Rafael, and was

10    designed to prevent the type of damage that occurred as stated herein. Violation of the above-

11    mentioned codes and ordinances and the improper construction methods undertaken resulted in

12    severe earth movement damage and hillside collapse, which is precisely the type of damage

13    which would likely occur without appropriate compliance with the above-mentioned codes and

14    ordinances and without appropriate compliance with applicable building practices. By failing to

15    construct the property properly and obtain appropriate permits, inspections, et. al., defendants,

16    and each of them, failed to obtain appropriate engineering and documentation to provide guidance

17    and criteria for the work performed or for the public entity to use to assure proper construction

18    and hillside stability. One of the purposes of the permitting process is to allow the public entity

19    inspectors to confirm that there was appropriate engineering and documentation where required,

20    which was the case for the above-mentioned improvements, and that the construction performed

21    at the site would conform with those requirements.

22         19.      Shortly after the landslide occurred, plaintiff notified defendants of the event, but

23    defendants have, and continue to, refuse to provide plaintiff with any compensation. Plaintiff has

24    tried to mediate this matter with defendants Ede and Does 1-10, but said mediation was

25    unsuccessful. Plaintiff requested mediation in March 2017, but defendants refused to mediate

26    until October 31, 2017, preventing plaintiff from filing a lawsuit prior to that time.

27

28

SECOND AMENDED COMPLAINT

**First Cause of Action – Negligence**

20.     Plaintiff realleges and incorporates by reference herein each and every allegation in Paragraphs 1 through 19 above.

21.     Plaintiff was a subsequent owner of the property and a person within the class of persons to whom defendants and each of them owed a duty of care. Although not in privity of contract with defendants Riptide et.al., the transaction whereby Riptide was hired and performed the above-mentioned construction work at the property was designed to affect plaintiff as a subsequent owner of the property, and the injury to plaintiff was foreseeable in that the failure to properly perform said work was an immediate cause of the landslide which occurred. Defendants, and each of them, owed a duty to plaintiff to exercise reasonable care in performing this construction, which included, but was not limited to, failure to properly perform foundation constructions, grading and drainage work, to obtain appropriate permits, inspections, engineering, etc. as stated above, and defendants knew or should have known with reasonable certainty that the subsequent owners of said property would suffer damages if the work failed to perform as intended and if defendants, and each of them, failed to perform their respective duties in a reasonable and workmanlike manner.  In addition to being required to perform the work in a non-negligent manner, defendants, and each of them, were required under appropriate building codes, statutes and ordinances to obtain and finalize permits and appropriate engineering for the work done.

22.     Defendants, and each of them, failed and neglected to properly perform their functions, duties and responsibilities in their capacities described above, in a reasonably workmanlike manner, within the prevailing standard of care for building contractors and breached their duties of care to plaintiff.  This includes, but is not limited to, failing to perform the respective construction activities in a proper and workmanlike manner, willfully concealing the lack of permits for the project beyond the pool itself, and failure to property engineer portions of the project which ultimately failed causing the landslide at plaintiff's property. Had the defendants properly executed this work, the landslide would not have occurred.  The defects as described above have caused, and will continue to cause, damage to plaintiff.  As a direct and

1  proximate cause of defendants', and each of their, conduct as stated above, plaintiff has been

2  damaged as more fully set forth herein.

3       23.    The exact amount of these damages is currently unknown to plaintiff, but will be

4  established at the time of trial, according to proof.  They include, but are not limited to, the cost of

5  repairs to plaintiff's property, the cost of expert investigations, loss of use to plaintiff of the

6  property, and diminution in value of the property as may be shown at trial.

7       Wherefore plaintiff prays for judgment as set forth below:

8            **Second Cause of Action – Breach of Contract**

9            **vs. Defendants Ede and Does 1 through 10**

10       24.    Plaintiff realleges and incorporates by reference each and every allegation in

11  Paragraphs 1 through 23 above.

12       25.    On or about October 2016, plaintiff entered into the written agreement with

13  defendants Ede and Does 1 through 10 to purchase the property.

14       26.    Thereafter, said defendants breached the agreement by selling to plaintiff a

15  property that contained material defects and omissions, including but not limited to defective

16  material/workmanship as set forth above. Moreover, said defendants knew the property sold to

17  plaintiff contained material defects and omissions and knew that certain work was done at the

18  property without permits being properly finaled and approved by the public entity with

19  appropriate inspections. These representations and concealments constituted a failure of

20  consideration and, as a result, plaintiff did not get the benefit of the bargain of the agreement.

21  Said defendants further breached the implied covenant of good faith and fair dealing contained in

22  all contracts under California law by doing the things alleged above.

23       27.    Plaintiff has performed all obligations under the agreement to be performed on his

24  part and under the terms of the agreement.

25       28.    Plaintiff has suffered economic damages proximately caused by defendants and

26  each of their breach of the agreement in an amount to be shown at trial as is more fully set forth

27  above.

28

SECOND AMENDED COMPLAINT

29.     Plaintiff has incurred attorneys' fees and costs in an amount to be proven at trial, to which plaintiff is entitled to recover from said defendants pursuant to the terms of the agreement.

Wherefore plaintiff prays judgment as set forth below:

### Third Cause of Action – Breach of Duty to Disclose Material Facts
### vs. Defendants Ede and Does 1 through 10

30.     Plaintiff realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 29 above.

31.     Plaintiff is informed and believes and thereon alleges that at some time prior to the execution of the agreement and continuing through the close of escrow said defendants were, or had information, that put them on notice that the property, including the work done in the pool area, failed to meet the requirements for building permits and failed to be built in a workman-like manner.

32.     Said defendants failed to disclose those defective items referred to above and were aware of such deficiencies and were acting by themselves and through contractors, subcontractors, laborers and others and oversaw the substantial work referenced above.  They had access to information that put them on notice of improper construction that would have led to failures in the property as alleged above.  Said defendants had a duty to disclose such deficiencies, material defects and omissions. The liability of said defendants arises both out of common-law as well as statutory law referenced in Civil Code section 1102 *et. seq.*

33.     As a result of the failure to disclose such material defects and omissions, plaintiff has and will incur damages as set forth above.

Wherefore plaintiff prays for judgment as set forth below:

### Fourth Cause of Action – Negligent Misrepresentation
### v. Defendants Ede and Does 1 through 10

34.     Plaintiff alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 33 above.

SECOND AMENDED COMPLAINT

35.     As set forth above, said defendants made misrepresentations to plaintiff or concealed facts from plaintiff about the construction at the property.  Said defendants had a duty to avoid exposing plaintiff to an unreasonable risk of harm by making misrepresentations of fact, and/or concealing relevant facts, and/or making representations regarding the property for which they had no justifiable reason to believe were accurate or true.

36.     Defendants made these representations without a reasonable basis for believing that such statements were true and should have known these misrepresentations and concealments would impact plaintiff's purchasing decisions. These defendants made the assertions of facts and concealment of facts in order to induce plaintiff to act upon the information or their falsely induced beliefs, and to have plaintiff purchase the property.

37.     Plaintiff justifiably relied on the misrepresentations and concealments by said defendants and purchased the property.

38.     As an actual and proximate result of the misrepresentations and concealments regarding the property made to plaintiff by said defendants in the suppression and omission of facts directly and materially affecting the condition and desirability of the property, plaintiff has suffered serious damages on account of purchasing said property and has incurred expenses, and will be forced future to incur expenses, in an amount in excess of the minimum jurisdiction of this court which sums will be established according to proof at the time of trial.

Wherefore plaintiff prays for damages as is more fully set forth below:

**Fifth Cause of Action  - Fraud/Concealment v. All Defendants**

39.     Plaintiff alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 38 above.

40.     Defendants, and each of them, represented to each other and to plaintiff that all work performed by them, or on their behalf, had been performed in a proper and workmanlike manner with all necessary permits, inspections and engineering and in accordance with all appropriate and applicable building codes and ordinances.  Plaintiff is informed and believes that these representations were made by Riptide to Mr. Ede during the construction either orally and/or in writing and to the public at large as well as by Mr. Ede to plaintiff.

SECOND AMENDED COMPLAINT

41.     As set forth above, defendants and each of them concealed from plaintiff significant building defects that were not visible to plaintiff at the time he purchased the property. Knowledge of the failure by defendants to properly construct the property improvements, properly obtained engineering and inspections as well as failing to properly obtain appropriate permits and comply with appropriate building codes were beyond the reach of plaintiff's knowledge prior to the time that he purchased the property.  These defendants had exclusive knowledge of these material facts which were not known to plaintiff.  Plaintiff believes and alleges that these defendants actively concealed these material facts from plaintiff in order to induce plaintiff to purchase the property. These concealments included, but were not limited to, the concealment of the status of permits, use of fill materials and other conditions on site and other actions alleged herein.  All defendants knew, or should have known, that the property would be used not only by defendant Ede, but by subsequent owners such as plaintiff.

42.     At the time defendants and each of them concealed and suppressed these facts, they knew the true status and defective condition of the property and permit status. These undisclosed facts were known and accessible to defendants since they were in charge of performing the construction activities at the property.  Said defendants intended to deceive subsequent owners into believing that all construction was code compliant and allowed defendants to perform work at the property without incurring necessary expenses.

43.     Some of the defendants, Mr. Ede and Does 1 through 10, made these representations directly and indirectly to plaintiff prior to the purchase of the property in the form of written disclosure statements, advertising materials and other communications provided to plaintiff as part of the sale transaction which took place in 2016.  While defendants Riptide, et. al. did not make any direct representations to plaintiff, these defendants knew and had reason to expect that representations made by Riptide to Mr. Ede to the same effect would also be made and communicated to any third parties, such as plaintiff, who would purchase the property from Mr. Ede. They had reason to believe that any representations made by them would be repeated and that the information would influence the conduct of any future potential purchasers of the property such as plaintiff.

SECOND AMENDED COMPLAINT

44.     Such undisclosed information was not known or within the reach of the diligent attention and observation by plaintiff prior to purchasing the property, and plaintiff justifiably relied on both the express and tacit representations of defendants.  As part of plaintiff's reliance on the representations made to him, he did not perform any further investigations with regard to the construction activity referred to above, and instead purchased the property for the price which was ultimately paid to Mr. Ede.  Had he known the true facts, further investigation would have been done and would have disclosed the improper construction which ultimately led to the landslide which damaged plaintiff as more fully set forth above, and he would not have purchased the property as contracted for with Mr. Ede.

45.     As an actual and proximate result of such conduct by defendants, and each of them, plaintiff has been damaged as is more fully set forth above.

46.     The aforementioned conduct of the defendants was intentional misrepresentation, deceit or concealment of material facts known to them with the intention on the part of defendants of depriving plaintiff of property or legal rights or otherwise causing injury.  Additionally, such conduct was despicable and subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages in amount according to proof.

**Sixth Cause of Action – Against All Defendants – Negligence Per Se**

47.     Plaintiff alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 46 above.

48.     As more fully set forth above, the work done by defendants for the pool house and the pool decking was done without the appropriate permits and engineering required by California statutes, ordinances and laws.

49.     As a direct and proximate result of said work being done negligently and without appropriate permits, plaintiff has been damaged as more fully set forth above.

Wherefore, plaintiff prays for judgment as is more fully set forth above.

SECOND AMENDED COMPLAINT

## PRAYER

Wherefore plaintiff prays for judgment against defendants and each of them as follows:

1.    For general and special compensatory damages in excess of the minimum jurisdiction of this court to be proved at the time of trial.

2.    For interest at the legal statutory rate on all sums.

3.    For costs of investigation and expert fees incurred.

4.    For loss of use of plaintiff's property.

5.    For attorneys' fees incurred (as to Defendants Ede and Does 1-10)

6.    For punitive damages according to proof.

7.    For mediators fees incurred.

8.    For costs of suit.

9.    For such other and further relief as the court may deem just and proper.

DATED:      April 17, 2018               WILLIAMS & GUMBINER LLP

Alan Mayer
Attorneys for Plaintiff
David Maher

Y:\Maher, David\Litigation\Complaints and Answers\2AC\2018-04-17 2AC.doc

-12-

SECOND AMENDED COMPLAINT

PROOF OF SERVICE

Case Name:     *Maher v. Ede*, MCSC No. CIV1704077

I, the undersigned, under penalty of perjury, declare that I am a citizen of the United States, over the age of 18 years and not a party to the within entitled cause of action. My business address is 100 Drakes Landing Road, Suite 260, Greenbrae, California 94904, and I am employed in Marin County, California. On **April 17, 2018**, I served a true copy of:

**SECOND AMENDED COMPLAINT**

I caused to be served said document on the following parties involved as follows:

Jerome R. Satran
Mary E. Coombe
Koeller Nebeker, et al.
1478 Stone Point Drive, Suite 400
Roseville, CA 95661
Phone 916-724-5700 | Fax 916-788-2850
mary.coombe@knchlaw.com
jerome.satran@knchlaw.com
Attorney for Jared Ede, individually and as trustee of the Jared Ede Trust)

Daphne A. Beletsis
PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP
438 First Street., 4th Floor
Santa Rosa, CA 95401
Tel: (707) 525-8800 Fax: (707) 545-8242
Email: beletsis@perrylaw.net
Stephanie Caron (staff)
Caron@perrylaw.net
Nicole M. Jaffee (staff)
Jaffee@perrylaw.net
Attorney for Riptide Construction, Inc. and Robert Jones
[No eservice agreement]

| | |
|---|---|
| X | **By First Class Mail** by depositing sealed envelopes in the United States mail at Greenbrae, California with postage fully prepaid. |
| | **Via Federal Express** |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration is executed on April 17, 2018, at Greenbrae, California.

Victoria Fedoroff
vicki@williamsgumbiner.com

\\SBSSERVER\RedirectedFolders\Vicki Fedoroff\My Documents\POS Fedoroff Ede

1

EXHIBIT B

**Inez H. Corenevsky**
**Assistant Vice President**
Phone: 818-662-4365
Fax: 818-637-6015
inez.corenevsky@us.hdi.global

April 1, 2019

Bob Jones
Riptide Construction, Inc.
1275 4th Street, #239
Santa Rosa, CA  95404

     RE:    Claim:             NCHD18100011
            Policy Holder:   Riptide Construction Incorporated
            Policies:       GK20X000611 00 10, eff 08/25/15 – 03/01/16
                                GK20X000611 00 07, eff 03/01/16 – 03/01/17
            Case:          _David Maher v. Jared Ede, Riptide Construction Incorporated, et al._
            Venue:        Marin County Superior Court, California
            Case Number:  CIV1704077

Dear Mr. Jones:

HDI Global Insurance Company formerly known as HDI-Gerling America Insurance Company (HDI) acknowledges receipt of a request for defense and indemnity of Riptide Construction Incorporated ("Riptide") in the matter captioned _David Maher v. Jared Ede, et al_, currently pending in Marin County Superior Court.    Based on our understanding of the claim, documentation supplied to date, and a review of the policy terms and conditions, HDI will provide defense in this matter subject to a reservation of rights. The remainder of this letter explains our position.

**Factual Background**
This claim arises out of alleged construction defects  at a single-family residence located at 25 Edgewood Way, San Rafael, California.  Riptide participated in the original construction of the home in 2007 and 2008. The plaintiff alleges that in January 2017 a landslide occurred at the property in the same area where the construction was done by the defendants, due to improper construction activity.

**Policy**
HDI issued Commercial General Liability policies GK20X000611 00 CA, effective 8/25/15 – 3/1/16 and GK20X000611 00 07 CA, effective 3/1/16 - 3/1/17 to Riptide Construction

Bob Jones
April 1, 2019
Page 2

Incorporated.  Each policy provides a $1,000,000 Each Occurrence Limit; and a $2,000,000 General Aggregate Limit.  All Commercial General Liability Coverage (CGL) is written on Form CG 00 01 04 13.  Pertinent portions of the policy are quoted below:

**SECTION I - COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a**. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section **III** –Limits Of Insurance; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

    **b**. This Insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period;

        **(3)** Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" injury" or  "property damage" during or alter the policy period will be deemed to have been known prior to the policy period.

Bob Jones
April 1, 2019
Page 3

    **c.** "Bodily Injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        **(3)** Becomes aware by any other means that "bodily injury or "property damage" has occurred or has begun to occur.

**2. Exclusions**

This insurance does not apply to:

**j. Damage To Property**

"Property damage" to:
* * *
    **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    **(6)** That particular part of any property that must be restored repaired or replaced because "your work" was incorrectly performed on it.
* * *
Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage"  included in the products/completed operations hazard".

Bob Jones
April 1, 2019
Page 4

    **k. Damage To Your Product**

        "Property damage" to "your product" arising out of it or any part of it.

    **l.  Damage To Your Work**

        "Property damage" to "your work" arising out of it or any part of it and included in the "products–completed operations hazard".

        This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

    **m. Damage To impaired Property Or Property Not Physically Injured**

        "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

        **(1)**  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

        **(2)**  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

        This exclusion does not apply to the loss of use of other property arising  out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Various words and phrases used in the policy have special meaning:

**SECTION V - DEFINITIONS**

**13**.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**16**.  "Products-completed operations hazard":

    **a.**  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)**  Products that are still in your physical possession; or

        **(2)**  Work that has not yet been completed or abandoned.  However, "your work" will  be deemed completed at the earliest of the following times:

Bob Jones
April 1, 2019
Page 5

    **(a)**  When all of the work called for in your contract has been completed.

    **(b)**  When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    **(c)**  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b**. Does not include "bodily injury' or "property damage" arising out of:

    **(1)**  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)**  The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)**  Products or operations for which the classification listed in the Declarations or policy schedule, states that products-completed operations, are subject to the General Aggregate Limit.

**17.**  "Property damage" means:

    **a**. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b**. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    For the purposes of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and  applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Bob Jones
April 1, 2019
Page 6

**22**. "Your work":

    **a**. Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b**. Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)** The providing of or failure to provide warnings or instructions.

The policies contain the **CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE LIMITATION** Endorsement (Form NI GL AM 2009 05 14) which states:

    **CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE LIMITATION**

    This endorsement modifies the insurance afforded under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE FORM

    **Insuring Agreement under SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, paragraph b.(1), (2), (3), paragraph c., and paragraph d. are replaced by the following:**

    **1. Insuring Agreement**

        **b**. This insurance applies to "bodily injury" and "property damage" only if:

            **(1)** The "bodily injury" and "property damage" is caused by an "occurrence" that first takes place in the "coverage territory"; and

            **(2)** The "bodily injury" or "property damage" first occurs or is alleged to first occur during the policy period. This insurance does not apply to any "bodily injury" or "property damage" that is continuous or progressively deteriorating and that first occurs prior to the effective date of this policy or after the expiration of this policy, even if such injury or damage continues or deteriorates during the time of this policy period.

Bob Jones
April 1, 2019
Page 7

    **c.**  This insurance does not apply to "bodily injury" or "property damage" that first occurs prior to the effective date of this policy regardless of whether such "bodily injury" and "property damage" was known or unknown to any person, organization or entity.

**Analysis**

Based on the allegations that Riptide's work was performed negligently and that work has led to property damage, HDI will defend Riptide and Mr. Jones subject to a complete reservation of rights.  We have appointed defense counsel to protect the interests of Riptide Construction and Robert Jones.  We ask that you cooperate fully with counsel and the firm:

    Edward C. Schroeder, Jr.
    Selman Breitman LLP
    33 New Montgomery, 6th Floor
    San Francisco, CA 94105
    nschroeder@selmanlaw.com
    Phone:  415-979-2009

HDI's defense and investigation into this claim is  subject to a full and complete reservation of rights. HDI reserves the rights to do the following:

1.  HDI reserves the right to continue to investigate the facts of the claim and the allegations contained in the lawsuit.

2.  HDI reserves the right to decline to indemnify for damages and claims not covered by the policies.

3.  HDI reserves the right to seek direct contribution from the insured for uncovered settlements or judgments.

4.  HDI reserves the right to file a declaratory judgment action to have a court determine whether HDI is or was obligated to indemnify or defend you in this action.

5.  HDI reserves the right to reimbursement from the insured and/or its insurance carriers for defense costs and expenses incurred for uncovered claims and damages.

6.  HDI reserves the right to withdraw from the defense of this matter.

7.  HDI reserves the right to file a declaratory judgment action to have a court determine whether HDI is or was obligated to indemnify or defend you in this action.

8.  HDI reserves the right to HDI reserves its rights to appeal any judgment.

Bob Jones
April 1, 2019
Page 8

9.   HDI reserves the right to amend, modify and/or supplement its position on coverage.

If you have additional factual information which would alter our coverage decision, please forward it to the claim handler:

> David Trawick
> North American Risk Services
> PO Box 166002
> Altamonte Springs, FL  32716-6002
> Phone:  321-441-1359 or 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, ext. 1359
> Email:  dtrawick@narisk.com

Receipt of such information does not waive or change our coverage decision unless you are so advised in writing.

The views expressed herein are not intended to be exclusive or exhaustive. HDI's coverage position is based on the information presently available to us.  Nothing contained herein should be construed as a waiver of any rights or defenses whether or not stated herein which HDI may possess under its policy and/or applicable law.  Any investigation conducted by HDI regarding the above-referenced lawsuit is subject to all terms, conditions, provisions and limitations of the HDI policy.  Any actions taken by HDI or its agents, representatives or attorneys do not constitute and are not intended as a waiver of any rights or defenses available to HDI whether or not stated herein that may be available now or at any point in time.  HDI reserves its rights to supplement and/or amend its coverage position at any time and to assert any defenses, whether or not enumerated herein, which may now or later be applicable.

The California Fair Claims Settlement Practices Act requires that I inform you that if you believe this claim has  been wrongfully denied in whole or in part, you may have the matter reviewed by the Department of Insurance.  You can contact them at 1-800-927-4357; you may write to them at Consumer Services Division, California Department of Insurance, 300 South Hope Street, Los Angeles, CA  90013; or you may reach them on the internet at www.insurance.ca.gov  .

Sincerely,
**HDI GLOBAL INSURANCE COMPANY**


Inez H. Corenevsky

Bob Jones
April 1, 2019
Page 9


c:  Daphne A. Beletsis, Esq.
    Perry, Johnson, Anderson, Miller & Moskowitz LLP
    438 First Street, 4th Floor
    Santa Rosa, CA 95401

    NIF Insurance Services of California
    555 University Ave., Suite 182
    Sacramento, CA  95825